**Reversed and Remanded and Opinion filed August 27, 2024.**



In The

# Fourteenth Court of Appeals

## NO. 14-23-00493-CV

### AMAZON.COM SERVICES, LLC AND AMAZON LOGISTICS, INC., Appellants

### V.

### ROBERT  DE LA VICTORIA, Appellee

**On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 21-DCV-286864**

## O P I N I O N

Two Amazon companies appeal the trial court's interlocutory order denying their motion to compel arbitration of personal-injury claims asserted against them by an employee of a company allegedly in the business of delivering goods for the Amazon companies. We conclude that the trial court erred in denying the motion to compel arbitration. We reverse and remand.

# I. FACTUAL AND PROCEDURAL BACKGROUND

The claims in the trial court arise out of injuries sustained by appellee/plaintiff Robert De La Victoria when the driver of the truck in which he was a passenger, Soffe Abraham Ruiz Araujo ("Araujo"), allegedly fell asleep and drove the truck into a ditch at a high rate of speed. The truck allegedly came to a complete and violent stop when it struck a concrete culvert in the ditch, allegedly causing catastrophic injury to De La Victoria. The accident occurred on August 4, 2021, when Araujo allegedly was driving an "'Amazon' box truck" in Fort Bend County, Texas. Araujo and De La Victoria were both allegedly acting in the course and scope of their employment with Blazar Solutions, LLC ("Blazar"), a company whose exclusive business allegedly was delivering goods for appellants/defendants Amazon.com Services, LLC and Amazon Logistics, Inc. (collectively the "Amazon Parties"). At the time of the accident Araujo was driving a truck that had been leased by Blazar from Ryder Truck Rental, Inc. ("Ryder"). De La Victoria was allegedly assigned as a "helper" to Araujo on that day.

De La Victoria alleges that (1) he and Araujo would do their work at the direction and control of the Amazon Parties; and (2) the Amazon Parties retained the right of control over Araujo and Blazar. According to De La Victoria the Amazon Parties monitor Blazar's delivery services and its drivers and have control in the hiring and firing of drivers, drivers' appearances, the model of the trucks they drive, the number of packages they must deliver each day, the time within which they must complete each delivery, and the total time for the drivers to complete the entire route and return to the warehouse. De La Victoria contends that before the accident the Amazon Parties formed a "Delivery Service Partnership" with Blazar to deliver packages to Amazon customers. De La Victoria alleges that the Amazon Parties knowingly place unreasonable daily quotas for drivers and that

2

the unreasonable burden the Amazon Parties place on drivers incentivizes unsafe and fatigued driving by drivers like Araujo. The Amazon Parties deny these allegations and contentions.

De La Victoria filed suit in the trial court against Blazar, Araujo, Ryder, and the Amazon Parties alleging negligence claims against all defendants and seeking exemplary damages against each defendant based on the defendant's alleged gross negligence. De La Victoria also asserts the following liability theories against the Amazon Parties and Blazar: negligence hiring, negligent training, negligent supervision, negligent screening, and negligent retention. He also alleges the vicarious liability theories of joint enterprise and conspiracy against the Amazon Parties and Blazar. De La Victoria also alleges that the Amazon Parties are vicariously liable to him for the negligent and grossly negligent conduct of Blazar and Araujo under the theory of respondeat superior.

The Amazon Parties answered and filed a motion to compel arbitration ("Motion") based on a "Mutual Agreement to Individually Arbitrate Disputes" signed by De La Victoria and Blazar that the Amazon Parties attached to the Motion (the "Arbitration Agreement"). De La Victoria asserts that the Amazon Parties furnished to Blazar the form of arbitration agreement that Blazar required all its employees, including De La Victoria, to sign and that Blazar did not create this form of agreement. We presume for the sake of argument that this assertion is correct. In the Motion the Amazon Parties asked the trial court to compel De La Victoria to arbitrate his claims against them and to stay the proceeding until the conclusion of the arbitration. De La Victoria responded in opposition but did not submit any evidence with his response. The Amazon Parties filed a reply, and De La Victoria filed a supplemental response attaching responses to requests for admissions in which he sought to establish that Blazar did not create the form of

3

arbitration agreement used by Blazar and that the Amazon Parties provided Blazar with this form.

After an oral hearing at which no evidence was submitted, the trial court signed an order denying the Motion. The Amazon Parties timely perfected this interlocutory appeal.

## II. ISSUES AND ANALYSIS

### Did the trial court err in denying the Motion?

In the Amazon Parties' sole appellate issue, they assert that the trial court erred in denying the Motion. The Amazon Parties raise various points in support of this issue, and De La Victoria makes various arguments as to why this court should affirm the trial court's order.

### A. Did De La Victoria make judicial admissions that the document attached to the Motion is a true and correct copy of the arbitration agreement he signed?

On appeal De La Victoria asserts that the Amazon Parties failed to prove the existence of an arbitration agreement because they completely failed to authenticate the purported arbitration agreement attached to the Motion. De La Victoria did not voice this complaint in the trial court, but under this court's precedent, he did not need to do so. In *In the Estate of Guerrero*, this court, sitting en banc, determined that a document submitted as evidence in a motion-to-compel-arbitration context has a substantive defect and is incompetent if there was a complete failure to authenticate the document and thus this issue may be raised for the first time on appeal. *See* 465 S.W.3d 693, 705, 706–08 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (en banc). To satisfy the requirement of authentication, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. Tex. R. Evid. 901(a). In the Motion

4

the Amazon Parties asserted that the four-page document attached to the Motion was the agreement that De La Victoria signed. The Amazon Parties attached a copy of the four-page Arbitration Agreement, but they did not submit an affidavit or declaration stating that this document is a true and correct copy of the original. *See In the Estate of Guerrero*, 465 S.W.3d at 704 (stating that a properly sworn affidavit stating that the attached document is a true and correct copy of the original authenticates the copy so that it may be considered as evidence).

The Amazon Parties do not contend that they produced evidence sufficient to support a finding that the document attached to the Motion is a true and correct copy of the arbitration agreement De La Victoria signed. Instead, they argue that De La Victoria judicially admitted in the trial court that the four-page document attached to the Motion is a true and correct copy of the arbitration agreement De La Victoria signed. The Arbitration Agreement states that De La Victoria signed the agreement on October 14, 2020. A judicial admission is a formal waiver of proof that dispenses with the production of evidence on an issue and bars the admitting party from disputing it. *See In the Estate of Guerrero*, 465 S.W.3d at 705. As long as the statement stands unretracted, it must be taken as true by the court; it is binding on the declarant, who cannot introduce evidence to contradict it. *See id.* An attorney's statements on behalf of a client may serve as judicial admissions. *See id.* The elements required for a judicial admission are: (1) a statement made during the course of a judicial proceeding; (2) that is contrary to an essential fact or defense asserted by the person making the admission; (3) that is deliberate, clear, and unequivocal; (4) that, if given conclusive effect, would be consistent with public policy; and (5) that is not destructive of the opposing party's theory of recovery. *See id.* at 705–06.

In his response in opposition to the Motion De La Victoria stated as follows:

The arbitration agreement between Plaintiff and Defendant Blazar is also dated October 14, 2020. . . . The arbitration agreement only specifically names Plaintiff [De La Victoria] and Defendant Blazar as parties to be bound by the arbitration agreement. **The Amazon [Parties] now allege the language in the arbitration agreement (hereinafter referred to as the "Agreement")** requires that [De La Victoria] proceed to arbitrate his claims in this suit as to the Amazon [Parties]. . . . The Agreement does not extend to [the Amazon Parties] and [De La Victoria] neither understood nor assented to the Amazon [Parties] as a potential party to the Agreement. . . Now, however, the Amazon [Parties] seek to compel [sic] the Agreement which the Amazon [Parties] did not sign, [De La Victoria] did not assent to the Amazon [Parties] being a party to, and [De La Victoria] did not consider or otherwise understand the Agreement between himself and [Blazar] to be enforceable by the Amazon [Parties].

. . .

Not a single Amazon entity is referenced anywhere in the aforementioned **documents signed by Plaintiff** when he began working for [Blazar]. **Nowhere in the four (4) page Agreement is Amazon named** or reasonably identified. To find that **[De La Victoria]** (or any reasonable person based upon an objective standard) **knew**, should have known, or anticipated that the Amazon [Parties] would be **considered a party to the Agreement** with absolutely no reference to them whatsoever is unconscionable, especially given that none of the onboarding documents executed by [De La Victoria] upon the start of his employment with [Blazar] referenced any Amazon entity.

. . .

Now, for the self-serving purpose of potential arbitration, [the Amazon Parties] seek to persuade the Court that the extent of the Amazon [Parties'] involvement goes beyond what they have alleged to date in this case for the sole benefit of seeking arbitration and that they are somehow an entity **encompassed by the Agreement between [De La Victoria] and [Blazar]**.

. . .

Expressly stating that [Blazar], [De La Victoria], and others may not bind Amazon to any agreements, while simultaneously **seeking to bind [De La Victoria] to an agreement which does not identify the Amazon [Parties] and which [De La Victoria]** (and any other

reasonable person in his position) **certainly was unaware could even possibly be considered under the Agreement at the time [De La Victoria] signed** is unconscionable. **Thus, [De La Victoria] obviously did not intend the Amazon [Parties] to be a party to the Agreement even if he did have authority to bind Amazon to the Agreement.**

. . .

A plain reading of **the Agreement** makes obvious that **[De La Victoria]** (or any reasonable person in the same or similar position as [De La Victoria]) could never possess any intent to be bound to arbitrate with the Amazon [Parties] **when this document was executed before he even began working for [Blazar]**, much less knew of Amazon's involvement in this small local company [Blazar]'s business operations.

. . .

[De La Victoria] certainly did not contemplate the idea that **when he signed** an employment agreement with a small local company named Blazar Solutions, LLC that **the Agreement included in his onboarding paperwork** would encompass the multi-billion-dollar company Amazon. . . Further, a reasonable person could not conclude that **[De La Victoria]** (or any other reasonable person in the same or similar circumstances as [De La Victoria]) **contemplated** the involvement of the Amazon [Parties] in an arbitration, given the fact Amazon is never named, or even hinted at, **in the four (4) page Agreement**.

. . .

The **Agreement**'s wording further lends credence to the idea that **[De La Victoria] did not know what he was signing** or fully comprehend the breadth of the alleged scope of the **Agreement** as the Amazon [Parties] interpret. Thus [De La Victoria], nor any other reasonable person in his position could be found to assent to the terms as the Amazon [Parties] suggest. Instead, **the Agreement was put in front of him as a condition for employment** with [Blazar] and a plain reading of the Agreement makes arbitration appear like a more attractive process than litigation with clear bias and expectation that [De La Victoria] and others in his position rely on [Blazar's] explanation of legal proceedings. Based on the biased and only partial explanation of arbitration compared to litigation provided by [Blazar]

> and/or the Amazon [Parties], [De La Victoria] did not see a reason to consult an attorney **prior to signing the agreement**.
>
> . . .
>
> Additionally, Blazar's carefully worded **Agreement**, likely advised and/or created by legal counsel, created a power dynamic between [Blazar] and its employees such as **[De La Victoria] who had no attorney to review the Agreement**. Instead, it was presented as one of many documents that must be signed before [De La Victoria] could earn a paycheck.[1]

De La Victoria made these statements during the course of a judicial proceeding, and they are contrary to the assertion that the document attached to the Motion is not a true and correct copy of the arbitration agreement De La Victoria signed. *See id*. These statements are deliberate, clear, and unequivocal, and if given conclusive effect, they would be consistent with public policy. *See id*. These statements are not destructive of the Amazon Parties' theory that the document attached to the Motion is a true and correct copy of the arbitration agreement De La Victoria signed. *See id*. We conclude that statements made in De La Victoria's response to the Motion constitute judicial admissions that the document attached to the Motion is a true and correct copy of the arbitration agreement De La Victoria signed, thus obviating the need for the Amazon Parties to produce evidence sufficient to support a finding on this point, and barring De La Victoria from disputing that the document attached to the Motion is a true and correct copy of the arbitration agreement De La Victoria signed. *See Holt Texas, Ltd. v. Rubio*, No. 13-19-00206-CV, 2020 WL 1181253, at *2–3 (Tex. App.—Corpus Christi Mar. 12, 2020, no pet.) (holding that failure to authenticate the two signatures on the agreement was not a basis to deny the motion to compel arbitration because of the plaintiff's judicial admission as to which two parties signed the agreement) (mem. op.);

---

[1] Emphasis added.

*Gracepoint Holding Co. v. FJR Sand, Inc.*, No. 01-19-00574-CV, 2020 WL 61594, at *4 (Tex. App.—Houston [1st Dist.] Jan. 7, 2020, no pet.) (holding that defendant moving to compel arbitration did not need to authenticate the copy of the arbitration agreement on which defendant relied because of judicial admissions made by the plaintiff) (mem. op.); *Anglo-Dutch Energy, LLC v. Crawford Hughes Operating Co.*, No. 14-16-00635-CV, 2017 WL 4440530, at *6–7 (Tex. App.—Houston [14th Dist.] Oct. 5, 2017, pet. denied) (holding that the statements of the appellants in the trial court constituted judicial admissions that two of them were parties to the joint operating agreements) (mem. op.).

**B. Does the transportation-worker exemption to the Federal Arbitration Act apply in this case?**

The Amazon Parties assert that the Federal Arbitration Act ("FAA") governs the Arbitration Agreement while De La Victoria asserts that he is a transportation worker exempt from the FAA under section 1 of that statute. *See* 9 U.S.C. §1 (providing that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, **or any other class of workers engaged in foreign or interstate commerce**") (emphasis added); *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 252–53; 144 S.Ct. 905, 910–11, 218 L.Ed.2d 204 (2024). De La Victoria did not make this assertion in the trial court. On appeal he cites three cases and asserts that because he is the appellee and does not seek modification or reversal of the trial court's order, he may raise this point for the first time on appeal.

The three cases De La Victoria cites do not involve arbitration or the transportation-worker exemption. Two sister courts of appeals have held that an appellee/plaintiff may not argue for the first time on appeal that the FAA does not apply based on the transportation-worker exemption, concluding that this exemption was not an issue that the trial court considered in denying the motion to

compel arbitration. *See J.B. Hunt Transp., Inc. v. Lester*, No. 02-23-00035-CV, 2023 WL 3876758, at \*6–7 (Tex. App.—Fort Worth Jun. 8, 2023, no pet.) (mem. op.); *J.B. Hunt Transp.*, *Inc. v. Hartman*, 307 S.W.3d 804, 809 (Tex. App.—San Antonio 2010, no pet.). The parties have not cited and research has not revealed any case from the Supreme Court of Texas or this court as to whether the transportation-worker exemption may be raised for the first time on appeal. We presume, without deciding, that De La Victoria may raise this exemption for the first time on appeal. Even under this presumption, De La Victoria had the burden of proving that the transportation-worker exemption applies, so the evidence before the trial court at the time of its ruling must prove that De La Victoria was a transportation-worker. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000); *Osvatics v. Lyft, Inc.*, No. 20-CV-1426, 535 F.Supp.3d 1, 9 (D. D.C. 2021). None of the evidence before the trial court when it denied the Motion addressed the work De La Victoria performed, the connection, if any, between De La Victoria's work and interstate or foreign commerce, or whether De La Victoria was a transportation worker. In addition to submitting no evidence about his work, in his response to the Motion De La Victoria contended that the Arbitration Agreement did not fall within the scope of section 2 of the FAA and asserted that (1) "Blazar is a for profit-corporation engaged in the business of delivering packages *solely* in the State of Texas for the Amazon [Parties]";[2] and (2) "This case does not involve interstate commerce since [Blazar] did not operate outside of Texas." *See Allied–Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 273–77, 115 S.Ct. 834, 839–41, 130 L.Ed.2d 753 (1995) (holding that under section 2 of the FAA the statute applies to any contract affecting interstate or foreign commerce, as far as the Commerce Clause of the

---

[2] Emphasis in the original.

United States Constitution will reach). Because no evidence before the trial court shows that De La Victoria was a transportation worker exempt from the application of the FAA, there is no basis on which the trial court or this court could properly conclude that the transportation-worker exemption applies in today's case. *See Lee v. Postmates, Inc.*, No. 18-CV-03421-JCS, 2018 WL 4961802, at *8 (N.D. Cal. Oct. 15, 2018) (holding that plaintiff did not satisfy his burden of establishing the transportation-worker exemption because plaintiff produced no evidence that she was a transportation worker); *Pilot Travel Centers, LLC v. McCray*, 416 S.W.3d 168, 186–87 (Tex. App.—Dallas 2013, no pet.) (concluding that transportation-worker exemption did not apply in case in which there was no evidence that the worker in question was a transportation worker).

## C. Does the FAA apply to the Arbitration Agreement?

The Arbitration Agreement provides that "the [FAA] and federal common law applicable to arbitration shall govern the interpretation and enforcement of this Agreement." If for any reason the FAA is found not to apply to the Arbitration Agreement, then the agreement provides that "applicable state law shall govern." We have already concluded that the transportation-worker exemption does not apply. When, as in this case, the arbitration agreement expressly provides that it shall be governed by the FAA, a party seeking to compel arbitration under the arbitration agreement is not required to establish that the agreement or transaction at issue involves or affects interstate commerce. *See Pilot Travel Centers, LLC*, 416 S.W.3d at 177; *FIA Card Servs., N.A. v. Horn*, No. 14-08-00024-CV, 2009 WL 1748776, at *1 (Tex. App.—Houston [14th Dist.] Jun. 23, 2009, no pet.) (mem. op.); *In re Kellogg Brown & Root*, 80 S.W.3d 611, 617 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding). Therefore, the FAA governs the

11

Arbitration Agreement.[3]

Absent an enforceable agreement to delegate disputes regarding one or more arbitrability issues to the arbitrator, a party seeking to compel arbitration under the FAA must establish that (1) a valid arbitration agreement exists and (2) the claims at issue are within the scope of the agreement. *In re Igloo Prods. Corp.*, 238 S.W.3d 574, 577 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding [mand. denied]). If these two showings are made, the burden shifts to the party opposing arbitration to present a valid defense to the agreement, and absent evidence supporting such a defense, the trial court must compel arbitration. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227–28 (Tex. 2003); *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002). The issue of whether a non-signatory to the arbitration agreement has the authority to compel signatories to arbitrate under the agreement goes to the validity of the arbitration agreement. *See In re Rubiola*, 334 S.W.3d 220, 223–24 (Tex. 2011). Though there is a strong presumption under the FAA favoring arbitration, that presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *See J.M. Davidson, Inc.*, 128 S.W.3d at 227. We review the denial of a motion to compel arbitration for an abuse of discretion, reviewing matters of law de novo, but deferring to any fact findings by the trial court. *See In the Estate of Guerrero*, 465 S.W.3d at 700-01, 705. When, as in today's case, the trial court files no findings of fact or conclusions of law, it is implied that the trial court made all necessary findings of fact to support its ruling. *See id.* at 701. We review de novo

---

[3] De La Victoria asserts that because the transportation-worker exclusion applies, the FAA does not govern the Arbitration Agreement, and therefore the FAA does not preempt the additional requirements of the Texas Arbitration Act ("TAA") for the TAA to apply to personal injury claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.002(a)(3), (c); *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005). No evidence before the trial court shows that the transportation-worker exemption applies, and we have concluded that the FAA governs the Arbitration Agreement. Therefore, the FAA preempts the TAA's additional requirements. *See In re Nexion Health at Humble, Inc.*, 173 S.W.3d at 69.

the trial court's determinations as to whether a valid arbitration agreement exists and whether an arbitration agreement is binding on a nonparty. *See Lennar Homes of Texas Land & Construction, Ltd. v. Whiteley*, 672 S.W.3d 367, 376 (Tex. 2023).

### D. Does the Arbitration Agreement delegate to the arbitrator the determination as to whether De La Victoria's claims against the Amazon Parties are within the scope of Arbitration Agreement?

The Amazon Parties assert that the Arbitration Agreement delegates to the arbitrator the issue of whether De La Victoria's claims against the Amazon Parties are within the scope of the Arbitration Agreement. De La Victoria argues that there is no valid arbitration agreement and that the Amazon Parties lack the authority to force him to arbitrate his claims against them under the Arbitration Agreement. De La Victoria does not argue that his claims against the Amazon Parties would fall outside the scope of the Arbitration Agreement if there were a valid Arbitration Agreement.

A dispute over whether parties agreed to resolve their controversies through arbitration often encompasses three distinct disagreements: (1) the merits of the underlying controversy, (2) whether the merits must be resolved through arbitration instead of in the courts, and (3) who (a court or the arbitrator) decides the second question. *TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 701 (Tex. 2023). The second question must be answered before the first, and the third must be answered before the second. *Id*. Parties may agree that arbitrators, rather than courts, must resolve disputes over one or more of the arbitrability issues. *Id*. at 702. If the parties have agreed to delegate disputes regarding an arbitrability issue to the arbitrator, courts must enforce that agreement just as they must enforce an agreement to delegate resolution of the underlying merits to the arbitrator. *TotalEnergies E&P USA, Inc.*, 667 S.W.3d at 701. For the most part, the determination of whether parties have agreed to delegate arbitrability

13

issues to an arbitrator is governed by "ordinary state-law principles that govern the formation of contracts." *Id.* at 702 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995)). But because parties often might not realize the significance of having arbitrators decide the scope of their own powers, and to avoid the risk of requiring parties to arbitrate a dispute they have not agreed to arbitrate, courts will only enforce an agreement to delegate an arbitrability issue to the arbitrator if that agreement is "clear and unmistakable." *Id.*

The Arbitration Agreement provides for arbitration administered by an independent and neutral arbitrator from the American Arbitration Association ("AAA") in accordance with the AAA Employment Arbitration Rules and Mediation Procedures ("Employment Rules"). The Arbitration Agreement provides that if the Employment Rules are inconsistent with the terms of the Arbitration Agreement, the terms of the agreement shall govern. Thus, the Employment Rules were incorporated into the Arbitration Agreement, and these rules are a part of the Arbitration Agreement as if they were set forth within the agreement itself. *See id.* at 709. The Employment Rules are binding absent a conflict between these rules and the rest of the Arbitration Agreement. *See id.* We presume for the sake of argument that the Employment Rules clearly and unmistakably delegate the determination of all arbitrability issues to the arbitrator. *See id*. at 710–12.

The Arbitration Agreement contains express waivers of class action, collective action, consolidated action, and representative action procedures. After these waivers, the Arbitration Agreement contains the following paragraph:

> Notwithstanding any provision in the applicable arbitration rules, a court of law must resolve any dispute concerning the validity and enforceability of the [Arbitration] Agreement, and the validity,

14

enforceability or interpretation of the provisions pertaining to class, collective, and representative action waivers. The arbitrator must resolve all other disputes, including the arbitrability of claims pursuant to such other provisions.

Arbitrability issues include issues as to the validity, scope, or enforceability of the arbitration agreement. *Elite Townhomes, LLC v. Intown Construction Group, LLC*, —S.W.3d—,—, 2024 WL 1107889, at \*3 (Tex. App.—Houston [14th Dist.] Mar. 14, 2024, no pet.). Parties may agree to delegate to the arbitrator disputes regarding some, but not all, of the arbitrability issues. *See TotalEnergies E&P USA, Inc.*, 667 S.W.3d 702. Under the unambiguous language of the Arbitration Agreement, we conclude that the parties agree that, notwithstanding the provisions of the Employment Rules, the courts rather than the arbitrator will resolve disputes regarding the validity and enforceability of the Agreement, but that the arbitrator must resolve all disputes regarding the scope of the Arbitration Agreement. *See id*. The above provision clearly and unmistakably delegates to the arbitrator the determination of disputes as to whether the claims at issue are within the scope of the Arbitration Agreement. *See id*. at 710–11. This delegation provision is severable from the broader Arbitration Agreement, and courts must enforce the delegation provision and require the arbitrator to decide whether the claims at issue are within the scope of the Arbitration Agreement, unless De La Victoria successfully challenges the validity of the delegation provision itself. *See id*. at 718–19. Because De La Victoria has not asserted any challenge to the validity of this delegation provision itself, courts must enforce this delegation provision and require the arbitrator to decide whether the claims at issue are within the scope of the Arbitration Agreement. *See id*. Because the delegation provision does not cover disputes regarding the validity and enforceability of the Arbitration Agreement, those disputes are for the courts, and we address them below.

**E. Is the Arbitration Agreement a valid arbitration agreement under which the non-signatory Amazon Parties may compel De La Victoria to arbitrate?**

The Amazon Parties submitted the Arbitration Agreement to the trial court. As discussed above, the record contains judicial admissions by De La Victoria that the document attached to the Motion is a true and correct copy of the arbitration agreement signed by De La Victoria. De La Victoria signed the Arbitration Agreement as the "Employee," and he initialed each page. Blazar also signed the agreement. Neither of the Amazon Parties signed the Arbitration Agreement, which provides in pertinent part as follows:

> It is the goal of Blazar Solutions LLC (the "Company") to provide you (the "Employee") with a rewarding work environment. Disputes related to work can arise, however, and, if not resolved informally, can be disruptive, costly, and time consuming to resolve. Arbitration is an alternative to the traditional lawsuit and may resolve disputes more quickly and with less cost. In a traditional lawsuit, issues are resolved in court by a judge or a jury. In arbitration, issues are resolved outside of court by an independent third-party, known as an arbitrator.
>
> **MANDATORY ARBITRATION. THE EMPLOYEE AND COMPANY AGREE THAT ANY COVERED CLAIM (DEFINED BELOW), WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION OR ANY OTHER LEGAL OR EQUITABLE THEORY, SHALL BE SUBMITTED TO BINDING ARBITRATION.**[4]
>
> **Covered Claims.**[5] Except as explained in the section "Claims Not Covered" below, this Mutual Agreement to Individually Arbitrate Disputes (this "Agreement") covers all past, current, and future grievances, disputes, claims, issues, or causes of action (collectively, "claims") under applicable federal, state or local laws, arising out of or relating to (a) Employee's application, hiring, hours worked,

---

[4] Emphasis in original.

[5] Emphasis in original.

16

**services provided, and/or employment with the Company**[6] or the termination thereof, and/or (b) a Company policy or practice, or the **Company's relationship with or to a customer,**[7] vendor, or third party, including without limitation **claims Employee may have**[8] against the Company and/or **any Covered Parties**[9] (defined below), or that the Company may have against Employee.

The Employee and the Company each specifically acknowledges and agrees that **any claims brought by the Employee against any of the Covered Parties**, **whether brought jointly or severally with claims against the Company**, **shall be subject to arbitration under this Agreement**.[10] "Covered Parties" means the Company, any entity formerly or currently owned, affiliated, controlled or operated by the Company (a "company entity"), **clients of the Company**[11] or a company entity, and the former and current officers, directors, managers, employees, owners, attorneys, agents, and vendors of the Company and/or a company entity and/or clients of the Company.

**Term of Agreement.**[12] This Agreement to arbitrate shall survive the termination of Employee's employment.

**Employee Acknowledgment.**[13] I have read this Agreement and understand that by accepting or continuing employment with the Company, I agree to its terms and to be bound by the Agreement. I understand that this Agreement will remain in effect after my employment ends and that nothing in this Agreement modifies the at-will nature of my employment.

**ACCORDINGLY,**[14] each of the Employee and the Company hereby agrees, accepts, and executes this Agreement as of this date.

---

[6] Emphasis added.

[7] Emphasis added.

[8] Emphasis added.

[9] Emphasis added.

[10] Emphasis added.

[11] Emphasis added.

[12] Emphasis in original.

[13] Emphasis in original.

[14] Emphasis in original.

17

The law presumes that a party who signs a contract knows its contents. *See Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 423–24 (Tex. 2015). When a party signs an instrument after having an opportunity to read it, the law presumes that the party knows and accepts all of the instrument's terms, even if the party chose not to read the instrument. *See id.* One who signs an instrument without reading it can avoid this presumption under a narrow "trick or artifice" exception by showing that the signing party was prevented by a fraudulent trick or artifice from reading the instrument or having the instrument read to the signing party. *See id.* at 425; *Reynoso v. Dibs US, Inc.*, 541 S.W.3d 331, 340 (Tex. App.—Houston [14th Dist.] 2017, no pet.). De La Victoria has not alleged that a fraudulent trick or artifice prevented him from reading the Arbitration Agreement, nor has he presented any evidence supporting such an allegation. Therefore, we presume that De La Victoria knew and accepted all of the terms of the Arbitration Agreement. *See Nat'l Prop. Holdings, L.P.*, 453 S.W.3d at 423–24; *Reynoso*, 541 S.W.3d at 340.

As a matter of law the evidence establishes a valid arbitration agreement between Blazar and De La Victoria. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006). De La Victoria does not dispute that the Arbitration Agreement is a valid arbitration agreement between Blazar and him. De La Victoria argues that the Amazon Parties are non-signatories who may not force him to arbitrate his claims against them. The Amazon Parties contend that in the Arbitration Agreement Blazar and De La Victoria granted the Amazon Parties the right to compel De La Victoria to arbitrate his claims against the Amazon Parties under the Supreme Court of Texas's opinion in *Rubiola*. *See In re Rubiola*, 334 S.W.3d at 223–25. The Amazon Parties also assert that they may compel arbitration of De La Victoria's claims against them because they are third-party beneficiaries of the Arbitration Agreement.

18

In *Rubiola* Brian and Christina Salmon, the purchasers of a home, sued Greg and J.C. Rubiola (the "Rubiola Brothers") and others asserting claims for fraudulent inducement, violations of the Texas Deceptive Trade Practices Act, and negligence. *See id*. at 223. The Salmons alleged that J.C. Rubiola made a series of misrepresentations that induced them to buy the home. *See id*. at 223. The Rubiola Brothers sought to compel arbitration of the Salmons' claims against them, based on an arbitration agreement that the Salmons had signed with Rubiola Mortgage Company. *See id*. at 222. The Salmons asserted that the Rubiola Brothers were non-signatories to the arbitration agreement who did not have the right to compel the Salmons to arbitrate under that agreement. *See id*. The Supreme Court of Texas held that the Rubiola Brothers had the right to compel arbitration under the agreement. *See id.* at 223–25. Federal courts applying the FAA have recognized that a non-signatory may be bound to, or permitted to enforce, an arbitration agreement based on (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel, and (6) third-party beneficiary (collectively the "Six Bases"), but the *Rubiola* court did not rely on any of the Six Bases. *See id*.; *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005).

The *Rubiola* court noted that whether a non-signatory may compel arbitration pursuant to an arbitration agreement questions the existence of a valid arbitration agreement. *See In re Rubiola*, 334 S.W.3d at 224. Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate. *Id*. The *Rubiola* court observed that an obligation to arbitrate not only attaches to one who has signed an arbitration agreement but may also bind a non-signatory under principles of contract law and agency. *See id*. The high court then indicated that although arbitration agreements apply to non-signatories only in rare circumstances, the question of who may compel arbitration

19

under an arbitration agreement is ultimately a function of the intent of the parties, as expressed in the terms of the agreement. *See id*. The *Rubiola* court concluded that "parties to an arbitration agreement may grant non-signatories the right to compel arbitration." *Id.* at 222. The high court also stated that signatories to an arbitration agreement may identify other parties in their agreement who may enforce the agreement as though they signed it themselves. *See id*. at 226. The *Rubiola* court relied on *Sherer*, a case in which the United States Court of Appeals for the Fifth Circuit concluded that a non-signatory loan servicer had the right to compel arbitration based on its interpretation of the language of the agreement and without relying on any of the Six Bases. *See Sherer v. Green Tree Servicing, LLC*, 548 F.3d 379, 381–83 (5th Cir 2008); *In re Rubiola*, 334 S.W.3d at 225. The *Sherer* court indicated that without relying on any of the Six Bases, a court may conclude that a non-signatory has the right to compel arbitration of claims asserted against the non-signatory based on the court's interpretation of the arbitration agreement. *See Sherer*, 548 F.3d at 382. The *Sherer* court concluded that the non-signatory loan servicer had the right to compel arbitration of claims asserted against it by a signatory because the language of the agreement demonstrated that the signatory agreed to arbitrate its claims against the non-signatory.[15] *See Sherer*, 548 F.3d at 382–83. Thus, without relying on any of the Six Bases, a court may conclude that a non-signatory has the right to compel arbitration under an arbitration agreement based on the court's interpretation of the agreement as granting that right to the non-signatory. *See In re Rubiola*, 334 S.W.3d at 222–25; *Sherer*, 548 F.3d at 381–83.

Though the arbitration agreement in *Rubiola* did not expressly state that any

---

[15] The *Sherer* court did not state that the loan servicer was mentioned by name in the agreement, and none of the quoted language from the agreement mentioned the loan servicer by name. *See Sherer*, 548 F.3d at 381–83.

non-signatory had the right to compel arbitration under the agreement, the *Rubiola* court interpreted the agreement as granting that right to the Rubiola Brothers because (1) the scope of the agreement included all controversies or claims between the "parties"; (2) the term "parties" included the Salmons and also was defined to include "individual partners, affiliates, officers, directors, employees, agents, and/or representatives of [Rubiola Mortgage Company]"; and (3) each of the Rubiola Brothers was an officer and representative of Rubiola Mortgage Company and thus fell within the definition of "parties" in the arbitration agreement. *See In re Rubiola*, 334 S.W.3d at 222–24. The *Rubiola* court did not state that either of the Rubiola Brothers was mentioned by name in the terms of the arbitration agreement, and none of the quoted language from the agreement mentioned either of the brothers by name. *See id*. at 222–25.

Ordinary principles of Texas contract law determine whether a non-signatory may compel arbitration pursuant to an arbitration agreement. *See id*. at 224. In construing the Arbitration Agreement, our primary concern is to ascertain and give effect to the intentions of the parties as expressed in the contract. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). To ascertain the parties' true intentions, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *In re Whataburger Restaurants, LLC*, 645 S.W.3d 188, 194–95 (Tex. 2022); *GSC Wholesale, LLC v. Young*, 654 S.W.3d 558, 564 (Tex. App.—Houston [14th Dist.] 2022, pet. denied). Whether an agreement is ambiguous is a question of law for the court. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). An agreement is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Id.* But, when a written agreement is worded so that it can be given a certain or

21

definite legal meaning or interpretation, it is unambiguous, and the court construes it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

In the Arbitration Agreement, De La Victoria and Blazar agree that all Covered Claims, whether based in contract, tort, statute, fraud, misrepresentation or any other legal or equitable theory, shall be submitted to binding arbitration. De La Victoria and Blazar agreed that except as to the "Claims Not Covered,"[16] the Arbitration Agreement covers all claims arising out of or relating to the services provided by De La Victoria, his employment with Blazar, and Blazar's relationship with or to a customer, including without limitation claims De La Victoria may have against any of the Covered Parties. In the Arbitration Agreement, "Covered Parties" is defined to include "clients of [Blazar]." De La Victoria made judicial admissions in his live pleading and in his response to the Motion that the Amazon Parties are clients of Blazar.[17] *See Anglo-Dutch Energy, LLC*, 2017 WL 4440530, at *6–7. In the Arbitration Agreement De La Victoria and Blazar specifically acknowledge and agree that any claims brought by De La Victoria against any of the Covered Parties, whether brought jointly or severally with claims against Blazar, shall be subject to arbitration under the agreement. Thus, De La Victoria acknowledged and agreed that if he brings claims against Blazar's clients in a lawsuit, with or without bringing any claims against Blazar, those claims are subject to arbitration under the Arbitration Agreement. *See Commercial Standard*

---

[16] None of De La Victoria's claims fall within this category.

[17] In his live pleading De la Victoria alleges that Blazar was in the business of delivering goods for the Amazon Parties and that this was Blazar's exclusive business. In his response to the Motion, De La Victoria stated that "Blazar's business operations consisted of delivering good[s] which were sold, packaged, distributed, and directed by [the Amazon Parties]." On appeal De La Victoria asserts that delivering packages for the Amazon Parties was Blazar's only business and that the Amazon Parties' status as Blazar's clients does not create a valid arbitration agreement between the Amazon Parties and De La Victoria.

*Ins. Co. v. American General Ins. Co.*, 455 S.W.2d 714, 721 (Tex. 1970) (relying on the following definition of "severally": "[d]istinctly, separately, apart from others . . . .When applied to a number of persons the expression [s]everally liable usually implies that each one is liable alone"). Under the unambiguous language of the Arbitration Agreement, De La Victoria agreed that any claims brought by De La Victoria against any of Blazar's clients, whom he has judicially admitted include the Amazon Parties, shall be subject to arbitration under the Arbitration Agreement. *See In re Rubiola*, 334 S.W.3d at 224–25 (construing the arbitration agreement as expressly providing that certain non-signatories are parties to the agreement).

Neither Blazar nor any parties other than each of the Amazon Parties would have standing to move to compel arbitration under the Arbitration Agreement of De La Victoria's claims against the respective Amazon Party. *See In re Choice Homes, Inc.*, 174 S.W.3d 408, 410–12 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding) (holding that Choice Homes lacked standing to seek mandamus relief to compel arbitration of plaintiffs' claims against a current Choice Homes employee and against a former Choice Homes employee); *Marriott Int'l v. Danna*, 772 Fed. Appx. 42, 45–46 (5th Cir 2019) (holding that company that was not party to state court suit lacked standing to seek to compel arbitration of any claims in that suit and that other company that was a defendant in the state court suit had no standing to seek to compel arbitration of claims against one of its co-defendants). If Blazar's clients do not have the right to compel arbitration under the Arbitration Agreement, then the above parts of the Arbitration Agreement would be rendered meaningless. *See GSC Wholesale, LLC,* 654 S.W.3d at 564, 566–67.

De La Victoria argues that the Amazon Parties may not force him to arbitrate his claims against them because neither of the Amazon Parties signed the Arbitration Agreement. Although neither of the Amazon Parties signed the

23

Arbitration Agreement, that agreement contains no requirement that any entity sign the agreement to be able to force another party to arbitrate under it, and there is no general requirement that a party sign an arbitration agreement to be able to compel arbitration under it. *See In re Rubiola*, 334 S.W.3d at 224–25 (allowing parties who did not sign the arbitration agreement to compel arbitration under the agreement); *Sherer*, 548 F.3d at 382 (allowing party who did not sign the arbitration agreement to compel arbitration under the agreement).

De La Victoria argues that the Amazon Parties may not force him to arbitrate his claims against them because neither of the Amazon Parties is a party to the Arbitration Agreement. He is correct that neither of the Amazon Parties is a party to the Arbitration Agreement. The non-signatories in *Rubiola* fell within the definition of "parties" to the arbitration agreement. *See In re Rubiola*, 334 S.W.3d at 224–25. Thus, the language of the Arbitration Agreement in today's case differs from the language in the arbitration agreement in the *Rubiola* case. *See id*. Nonetheless, the *Rubiola* court did not state that the only way an arbitration agreement could grant non-signatories a right to compel arbitration of claims against them was to be a party to the arbitration agreement. *See id*. at 223–25. Instead the *Rubiola* court cited favorably the *Sherer* case, in which the Fifth Circuit determined that an arbitration provision granted a non-signatory who was not a party to the agreement the right to compel arbitration of claims against the non-signatory. *See Sherer*, 548 F.3d at 380–82.

De La Victoria asserts that the word "Amazon" does not appear anywhere in the Arbitration Agreement. Though this is correct, courts have held that an arbitration agreement granted a non-signatory the right to compel arbitration under an agreement that did not mention the name of the non-signatory. *See In re Rubiola*, 334 S.W.3d at 222–25; *Sherer*, 548 F.3d at 381–83.

De La Victoria also asserts that the status of the Amazon Parties as clients of Blazar, without more, does not give the Amazon Parties the right to compel arbitration under the Arbitration Agreement because that status alone does not satisfy the requirements needed to show that the Amazon Parties are third-party beneficiaries of the Arbitration Agreement. Presuming that this status alone does not satisfy these requirements, the failure to satisfy these requirements does not affect our analysis above under the *Rubiola* opinion, under which an arbitration agreement may give non-signatories the right to compel arbitration under an agreement without any requirement that the non-signatories be third-party beneficiaries of the agreement. *See In re Rubiola*, 334 S.W.3d at 222–25; *Sherer*, 548 F.3d at 381–83. Though De La Victoria relies upon the *In re Bayer Materialscience* and *In re Citgo Petroleum* cases, these cases are not on point because they address the issue of whether a non-signatory is a third-party beneficiary, and they were decided before the Supreme Court of Texas issued its opinion in *Rubiola*. *See In re Rubiola*, 334 S.W.3d at 222–25; *In re Citgo Petroleum Corp.*, 248 S.W.3d 769 (Tex. App.—Beaumont 2008, orig. proceeding [mand. denied]); *In re Bayer Materialscience, LLC*, 265 S.W.3d 452, 457 (Tex. App.—Houston [1st Dist.] 2007, orig. proceeding [mand. denied]).

De La Victoria asserts in his appellate briefing that the Amazon Parties are not Covered Parties under the Arbitration Agreement. He does not say why he thinks this is so. Under the plain text of the Arbitration Agreement the term "Covered Parties" includes the "clients of [Blazar]." De La Victoria made judicial admissions in his live pleading and in his response to the Motion that the Amazon Parties are clients of Blazar. *See Anglo-Dutch Energy, LLC*, 2017 WL 4440530, at *6–7. Thus as a matter of law the Amazon Parties are Covered Parties under the Arbitration Agreement.

We conclude that under the unambiguous language of the Arbitration Agreement De La Victoria and Blazar granted non-signatories who are Blazar's clients the right to compel arbitration under the Arbitration Agreement. *See GSC Wholesale, LLC,* 654 S.W.3d at 564, 566–67; *In re Rubiola*, 334 S.W.3d at 222–25; *In re Choice Homes, Inc.*, 174 S.W.3d at 410–12; *Sherer*, 548 F.3d at 381–83. Based on the plain text of the Arbitration Agreement and De La Victoria's judicial admissions that the Amazon Parties are clients of Blazar, we conclude that as a matter of law the Arbitration Agreement grants to the Amazon Parties the right to compel arbitration under the agreement of De La Victoria's claims against them.[18] *See GSC Wholesale, LLC,* 654 S.W.3d at 564, 566–67; *In re Rubiola*, 334 S.W.3d at 222–25; *Anglo-Dutch Energy, LLC*, 2017 WL 4440530, at \*6–7; *In re Choice Homes, Inc.*, 174 S.W.3d at 410–12; *Sherer*, 548 F.3d at 381–83. Thus, the Arbitration Agreement is a valid arbitration agreement under which the non-signatory Amazon Parties may compel De La Victoria to arbitrate his claims against them, and the trial court erred to the extent it impliedly concluded otherwise in denying the Motion.

**F. May the trial court's denial of the Motion be affirmed on the grounds that the Arbitration Agreement is procedurally and substantively unconscionable?**

In response to the Motion, De La Victoria asserted that the Arbitration Agreement is procedurally and substantively unconscionable. On appeal, De La Victoria states that although he argued in the trial court that the Arbitration Agreement was procedurally and substantively unconscionable, he chooses not to pursue those arguments in this appeal.

Because the law favors arbitration, De La Victoria, the party opposing

---

[18] We need not and do not address whether the Amazon Parties are third-party beneficiaries of the Arbitration Agreement.

arbitration, had the burden to prove in the trial court that the Arbitration Agreement was procedurally and substantively unconscionable. *See Cedillo v. Immobiliere Jeuness Establissement*, 476 S.W.3d 557, 570 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). The only evidence De La Victoria submitted to the trial court in response to the Motion was responses by the Amazon Partes to four requests for admission. In response to two requests, the Amazon Parties objected and did not admit or deny the request. In response to the other two, the Amazon Parties objected and then responded "admit" subject to and without waiving the objections. In the latter two requests, De La Victoria asked the Amazon Parties to admit that Blazar did not create the form of Arbitration Agreement that De La Victoria signed and that the Amazon Parties provided Blazar with this form. Though the record does not reflect that De La Victoria obtained a ruling on the Amazon Parties' objections in response to his requests for admissions, we presume for the sake of argument that Blazar did not create the form of Arbitration Agreement that De La Victoria signed and that the Amazon Parties provided Blazar with this form. De La Victoria did not argue in the trial court that the Arbitration Agreement was unconscionable because the Amazon Parties rather than Blazar were the source of this form, and this fact would not show that the Arbitration Agreement is unconscionable. In the absence of any other evidence, De La Victoria presented no evidence that would support a determination that the Arbitration Agreement is procedurally unconscionable or substantively unconscionable. *See id*. Thus, De La Victoria failed to satisfy his burden to prove that the Arbitration Agreement is unconscionable, and the trial court erred to the extent it determined that the Arbitration Agreement is procedurally unconscionable or substantively unconscionable.[19] *See id*. Although De La Victoria says he is not

---

[19] De La Victoria does not argue that he established any other defense to the enforcement of the Arbitration Agreement, and in the trial court he did not establish any other defense to the

pursuing these arguments on appeal, they nevertheless must be addressed because the trial court implicitly relied on these arguments in denying the Motion.

### III. CONCLUSION

Statements made in De La Victoria's response to the Motion constitute judicial admissions that the document attached to the Motion is a true and correct copy of the arbitration agreement De La Victoria signed, thus obviating the need for the Amazon Parties to produce evidence sufficient to support a finding on this point. Because no evidence before the trial court shows that De La Victoria was a transportation worker exempt from the application of the FAA, there is no basis on which the trial court or this court could properly conclude that the transportation-worker exemption applies in today's case. The FAA governs the Arbitration Agreement. The parties agreed to delegate to the arbitrator the issue of whether the claims at issue are within the scope of the Arbitration Agreement and to have the courts decide disputes regarding the validity and enforceability of the Arbitration Agreement. The Arbitration Agreement is a valid arbitration agreement under which the non-signatory Amazon Parties may compel De La Victoria to arbitrate his claims against them, and the trial court erred to the extent it impliedly concluded otherwise in denying the Motion. De La Victoria failed to satisfy his burden to prove that the Arbitration Agreement is procedurally or substantively unconscionable, and he says he is not pursuing his unconscionability arguments on appeal.

We conclude that the trial court abused its discretion in denying the Motion. We sustain the Amazon Parties' sole issue, reverse the trial court's order and remand with instructions to the trial court to issue an order (1) granting the Motion, (2) compelling arbitration of all De La Victoria's claims against the Amazon

---

enforcement of this agreement.

28

Parties, (3) requiring the arbitrator to decide whether these claims are within the scope of the Arbitration Agreement, and (4) staying the proceeding pending arbitration. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.021(c); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001).

/s/    Randy Wilson
Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.